HERALD NEWS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48530.   Promulgated July 22, 1932.

R. A. *Bartlett, Esq.*, for the petitioner.
C. A. *Ray, Esq.*, for the respondent.

OPINION.

Smith: The petitioner contends that it is entitled to have its tax liability for the entire calendar year 1926 computed on the basis of the consolidated return filed by it and the El Paso Times Company, or, in the alternative, that it is entitled under the provisions of section 240 (f) of the Revenue Act of 1926 to have its accounts consolidated with those of the El Paso Times Company for the period January 1 to May 24, 1926.

As to the first question, the statutory requirements for affiliation under section 240 (d) of the Revenue Act of 1926 are (1) the ownership by one corporation of at least 95 per cent of the stock of the other or others, or (2) the ownership by the same interests of at least 95 per cent of the stock of two or more corporations. The petitioner claims affiliation under the second provision. It contends that Ramsey, who held more than 5 per cent of the stock of the El Paso Herald Company during the period in question, constituted the same interests with Slater, who owned all of the stock of the El Paso Times Company. This contention must be denied. The term " same interests," as used in the statute, has been construed to mean the same economic interests. *Handy & Harmon* v. *Burnet*, 284 U. S. 136.

So far as the evidence shows, Ramsey and Slater had no common business interests. Ramsey merely lent Slater a sum of money and in settlement of the indebtedness acquired the 400 shares, amounting to more than 5 per cent, of stock of the El Paso Herald Company. These individuals were in no sense the same economic interests.

There is no question but that Ramsey was the legal owner of the shares in question, notwithstanding the agreement that Slater might reacquire them at his will and that he held a power of attorney to vote them. The statute requires legal ownership of at least 95 per cent of the stock by the same interests. This requisite was lacking during the period January 1 to May 24, 1926.

With respect to the second question, the statute provides, in section 240 (f) of the 1926 Act, as follows:

In any case of two or more related trades or businesses (whether unincorporated or incorporated and whether organized in the United States or not) owned or controlled directly or indirectly by the same interests, the Commissioner may and at the request of the taxpayer shall, if necessary in order to make an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses, consolidate the accounts of such related trades or businesses.

It is undeniable that the businesses here were " related " and were controlled directly or indirectly by the same interests. Beyond this point, however, we are unable to proceed in applying the statute. All that this provision of the statute requires the Commissioner to do is to " consolidate the accounts " of the related business, if necessary, " in order to make an accurate distribution or apportionment of gains, profits, income, deductions, or capital." The record before us indicates that such a consolidation of the accounts as the statute contemplates may have been made upon the basis of the written agreement under which the companies operated. In substance this agreement calls for an apportionment between the companies of the cost of production of both papers on the basis of the amount of the relative percentage of total pages issued. The revenue or income accounts were kept separately. At proper accounting intervals the necessary charges were made as between the several accounts. Apparently this plan produced the results of which the petitioner now complains, that is, a taxable gain for the El Paso Herald Company and a loss for the El Paso Times Company. The petitioner argues that " the operating loss indicated by the accounting records of the Times Company was reflected in the income of the Herald Company by reason of arbitrary allocation of production costs which were made, regardless of the earnings of the Times Company; " that " the portion of such costs arbitrarily assigned to the Times Company was inaccurate and greatly in excess of the actual costs of producing the

Times and hence caused the company to show a loss for accounting purposes." The fact is, however, that the petitioner has offered no other or better plan for a consolidation of the expense accounts of the companies, nor is any plan suggested for a consolidation and apportionment of the income and other accounts. It merely protests that the method used was arbitrary. We held in *Roessler & Hasslacher Chemical Co.*, 25 B. T. A. 915, that, where any distribution or apportionment of deductions is proper, it is incumbent upon the petitioner to prove an apportionment which is reasonably accurate under the circumstances.

As pointed out in *Broadway Strand Theatre Co.*, 12 B. T. A. 1052, and *Western Hide & Fur Co.*, 26 B. T. A. 354, where the accounts are consolidated under this provision of the statute, it is then necessary to break up the accounts and segregate the items attributable to each in order to determine the correct tax liability. There is no evidence before us which would afford a basis for such a segregation of the items unless it be the above agreement under which the companies operated. Cf. also *Nowland Realty Co.*, 18 B. T. A. 405; affd., *Nowland Realty Co.* v. *Commissioner*, 47 Fed. (2d) 1018. Certainly the statute does not purport to authorize the offsetting of a loss or gain of one business against a gain or loss of a related business by a consolidation of accounts.

*Judgment will be entered for the respondent.*